* * * * * * * * * * *
The Full Commission has reviewed Deputy Commissioner Homick's Opinion and Award based upon the record of the proceedings and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission AFFIRMS, with modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. The plaintiff is Betty D. Sampson; the employer is Goodyear Tire Rubber Company; and the carrier is Liberty Mutual Insurance Group.
2. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. The employer and the employee relationship existed between the employer and the employee on or about September 6, 2009, the date of the admittedly compensable injury by accident.
3. Plaintiff's average weekly wage was sufficient to generate the maximum weekly compensation rate for 2009 of $816.00.
4. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Pretrial Agreement, pp. 1-4;
 • Exhibit 2: Industrial Commission Forms, pp. 1-12;
 • Exhibit 3: Industrial Commission Motions Orders, pp. 1-145;
 • Exhibit 4: Medical Records, pp. 1-98;
 • Exhibit 5: Pay Stub, p. 1;
 • Exhibit 6: Wage Information, pp. 1-4;
 • Exhibit 7: W-2, p. 1;
 • Exhibit 8: Average Weekly Wage, p. 1; and
 • Exhibit 9: Defendants' Medical File for Plaintiff, pp. 1-17.
Also introduced into evidence are the following:
 • Plaintiff's Exhibit 1: August 13, 2010 redacted letter from defense counsel to Robert Coke, adjuster (Unredacted copy in sealed envelope); and *Page 3 
 • Plaintiff's Exhibit 2: Partially Redacted Adjuster's File (Unredacted pages in sealed envelope).
5. Plaintiff's issues for determination by the North Carolina Industrial Commission are as follows:
 a. Whether plaintiff sustained a compensable injury by accident on or about September 6, 2009, to her back, right shoulder, right leg, both knees, both feet, and both ankles and if so, to what benefits is she entitled?
 b. Whether plaintiff is entitled to medical treatment with Dr. David Jones pursuant to N.C. Gen. Stat. § 97-25, as an approved treating physician?
 c. Whether defendants should pay attorneys' fees based upon N.C. Gen. Stat. § 97-88.1?
 d. Whether defendants' June 3, 2010, appeal of the Order of April 6, 2010, approving Dr. Peter Dalldorf as the approved treating physician is untimely?
6. Defendants' issues for determination by the North Carolina Industrial Commission are as follows:
 a. Was plaintiff's current knee condition caused by the injury by accident on September 6, 2009?
 b. Did the September 6, 2009, injury materially aggravate or exacerbate plaintiff's underlying and pre-existing knee conditions?
 c. Whether plaintiff sustained a compensable injury to her shoulder, back or feet during the course and scope of her employment with employer-defendant? *Page 4 
 d. Whether the proper procedures were followed in the expedited medical motion setting to determine the authorized treating physician when a February 26, 2010, administrative order denied plaintiff's motion to change treating physician?
 e. To what additional benefits is plaintiff entitled under the Workers' Compensation Act?
 * * * * * * * * * * *
Based upon the competent, credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years old. Plaintiff graduated from high school and has taken some college courses.
2. Plaintiff began working for defendant-employer in 1990 as a tire sorter. Plaintiff has also worked as a bias cutter and as a fork lift operator for defendant-employer.
3. On September 6, 2009, plaintiff was consolidating defendant-employer's storage area. When plaintiff was unable to extricate an empty bead rack which was caught under an I-beam on the floor, she asked a truck operator to pull the rack free using his vehicle. While the truck operator was attempting to pull the rack free, another bead rack accidently became entangled with it, causing the truck to fishtail.
4. Plaintiff was standing in the middle of the V-shaped opening formed by the two racks attached to the truck. Plaintiff fell on her hands and knees and was pulled for several feet before the driver realized what had happened and stopped the truck to assist her. *Page 5 
5. On September 7, 2009, plaintiff presented to Cape Fear Valley Health Systems. X-rays of her right leg did not reveal any fractures, dislocations or significant bone or joint abnormalities.
6. On September 14, 2009, plaintiff met with Frank Anthony Murray, a physical therapist who contracts with defendant-employer to provide physical therapy services in defendant-employer's on-site medical clinic. Plaintiff presented with tenderness, limited range of motion and limited strength in her knees. Plaintiff also complained of some right shoulder pain, left-sided trunk pain and right calf pain.
7. On September 21, 2009, plaintiff presented to Cumberland County Hospital with complaints of pain in her knees, ankles and feet. Plaintiff was diagnosed with bilateral knee contusions and a contusion to her outer right ankle and was released from work until she could be examined by an orthopedic specialist.
8. On October 12, 2009, plaintiff presented to Dr. Christopher J. Barnes, an orthopedic surgeon. Plaintiff reported experiencing bilateral knee and ankle pain since her September 6, 2009 injury. Based on plaintiff's history, Dr. Barnes noted that plaintiff previously had bilateral knee arthroscopies in 2003 for chondromalacia patella performed by Dr. James P. Flanagan, but that she had done reasonably well until she experienced her work injury on September 6, 2009.
9. Dr. Barnes' examination of Plaintiff's knees revealed slightly diminished range of motion and mild joint line tenderness with significant tenderness over the patellar tendon bilaterally but no knee effusion. Dr. Barnes diagnosed plaintiff with bilateral knee and ankle pain, refilled her prescriptions for Naprosyn and Ultram and prescribed physical therapy. Dr. Barnes released plaintiff from work until her next visit. *Page 6 
10. At plaintiff's November 2, 2009 appointment with Dr. Barnes, plaintiff reported continued pain and tenderness about the knees, but she had improvement in her range of motion. Dr. Barnes referred plaintiff for continued physical therapy with Mr. Murray and released plaintiff to return to work with restrictions of no lifting more than 15 pounds and no standing or sitting for more than 15 minutes. Dr. Barnes opined that, if plaintiff did not require surgery, she could seek treatment with a provider at defendant-employer's facility.
11. Dr. Barnes opined that plaintiff had some tendonitis and perhaps an exacerbation of her pre-existing osteoarthritis in both knees. With regard to her ankles, Dr. Barnes opined that the minimal swelling and weakness plaintiff experienced could be resolved with physical therapy.
12. During his last visit with plaintiff, which took place on February 24, 2010, Dr. Barnes opined that plaintiff was not a surgical candidate and that she could return to suitable employment. Dr. Barnes did not address any complaints plaintiff may have been experiencing with regard to her back. As plaintiff did not present to Dr. Barnes again, he declined to provide an opinion regarding plaintiff's condition after this date.
13. Mr. Murray, the physical therapist, noted that there were not many jobs with defendant-employer that plaintiff would be able to perform with the work restrictions assigned by Dr. Barnes, and that accommodations would have to be made.
14. On November 10, 2009, defendants accepted plaintiff's bilateral knee and ankle injuries with the filing of a Form 60 Employer's Admission of Employee's Right to Compensation.
15. On December 18, 2009, plaintiff presented to orthopedic specialist Dr. James Flanagan for evaluation of her bilateral knee pain. Plaintiff is a longstanding patient of Dr. *Page 7 
Flanagan. Dr. Flanagan opined that the September 6, 2009 work incident accelerated plaintiff's knee problems and exacerbated her underlying arthritis. He opined that a "sit-down" job would be acceptable for plaintiff, but she should not perform any excessive standing, walking, lifting or carrying. Dr. Flanagan further opined that, as plaintiff has had exhaustive physical therapy and injections and her knee pain has persisted, she is a candidate for a total knee replacement.
16. On January 13, 2010, plaintiff filed with the Office of the Executive Secretary of the North Carolina Industrial Commission a Motion for Change in Treating Physician from Dr. Barnes to Dr. Flanagan. Defendants objected, and on January 28, 2010, Special Deputy Commissioner Jennifer S. Boyer denied plaintiff's Motion, but ordered an independent medical evaluation for plaintiff's knees.
17. On February 15, 2010, plaintiff filed a Motion for a Medical Evaluation with Dr. Peter Dalldorf. Defendants responded, and on February 26, 2010, Special Deputy Commissioner Jennifer S. Boyer denied plaintiff's Motion.
18. On March 10, 2010, plaintiff presented to Dr. Dalldorf, an orthopedic surgeon, with complaints of severe bilateral knee pain. Dr. Dalldorf's examination of Plaintiff revealed some crepitation and medial greater than lateral joint line pain in her knees, moderate stiffness, and bilateral ankle pain. X-rays taken at the appointment did not show very much degenerative change in Plaintiff's knees. Based on his first visit with Plaintiff, Dr. Dalldorf opined that she had some degree of underlying chronic arthritic trouble, with the addition of the acute traumatic component of chondromalacia patella. Dr. Dalldorf described that condition as consisting of irritated cartilage under the kneecap. Dr. Dalldorf opined that chondromalacia patella is difficult to ascertain from an MRI scan and that he was unaware of any other studies that would be beneficial to pinpoint the diagnosis. *Page 8 
19. On March 16, 2010, plaintiff had MRIs performed on her knees, which Dr. Dalldorf reviewed with her on March 19, 2010. Dr. Dalldorf opined that the MRI revealed mild diffusion and degenerative changes in the medial compartment and patella femoral in the left knee and similar findings of mild diffusion and early degenerative changes in the right knee. In an attempt to relieve plaintiff's pain, Dr. Dalldorf performed injections in plaintiff's knees; however, the injections only provided temporary relief. Dr. Dalldorf restricted Plaintiff to sedentary work, however, as there was no work available which comported with her restrictions, plaintiff remained out of work.
20. Dr. Dalldorf opined that plaintiff's work injury on September 6, 2009 aggravated and accelerated her pre-existing bilateral knee condition. With respect to work restrictions, Dr. Dalldorf opined that plaintiff should not perform any lifting, bending, stooping, climbing, kneeling or squatting, but that she could perform seated work.
21. Dr. Dalldorf recommended bilateral knee arthroscopies to clean out the patella femoral joint to be performed approximately six weeks apart. Dr. Dalldorf opined that this would likely provide significant pain relief, would assist plaintiff in returning to work for defendant-employer, and was necessary to effect a cure, provide relief and lessen plaintiff's period of disability.
22. Dr. Dalldorf opined to a reasonable degree of medical certainty that the September 6, 2009 work accident resulted in plaintiff's present condition of bilateral traumatic chondromalacia patella. When questioned on cross examination about plaintiff's pre-existing knee complaints, Dr. Dalldorf opined that, although plaintiff did have prior knee problems, she had progressed well and had been able to work prior to the September 6, 2009 work incident despite her pre-existing problems. *Page 9 
23. Dr. Dalldorf stated that plaintiff does have chronic arthritis which, according to Dr. Flanagan, may someday necessitate knee replacements but that would not be related to the September 6, 2009 work incident. Nonetheless, Dr. Dalldorf opined that the September 6, 2009 work incident caused an acute problem under plaintiff's kneecaps, chondromalacia patella, which needs to be addressed.
24. Dr. Dalldorf did not consider plaintiff to be at maximum medical improvement as of his last visit with her.
25. On April 5, 2010, plaintiff presented to Dr. David Scott Jones, a neurosurgeon, with complaints of back pain that occasionally radiated into her left lower extremity. Dr. Jones opined that plaintiff had disk degeneration at two levels in her back, L4-5 and L5-S1, with mild broad-based disk bulges and small superimposed annular tears.
26. Dr. Jones opined to a reasonable degree of medical certainty that the work incident of September 6, 2009 which plaintiff described to him was sufficient to materially exacerbate plaintiff's pre-existing disk desiccation at L4-5 and L5-S1, including an exacerbation of the small annular tears. Although there were differences in the testimony regarding how plaintiff was injured on September 6, 2009, when presented with differing scenarios on direct and cross examination, Dr. Jones stated that the differences did not change his opinions.
27. Dr. Jones also opined that plaintiff had not yet reached maximum medical improvement as of her last visit.
28. Dr. Jones opined that it would be beneficial for plaintiff to proceed with treatment of her knees before undergoing treatment for her back as the knees were likely easier to fix than the back, the recovery period from the knee surgery would be shorter and the knee surgery could help plaintiff's back condition by changing her gait. *Page 10 
29. On April 6, 2010, in response to the filing of an expedited medical motion by plaintiff, Deputy Commissioner Chrystal Redding Stanback approved Dr. Dalldorf as plaintiff's treating physician and referred all remaining issues to a full evidentiary hearing.
30. On April 13, 2010, plaintiff presented to orthopedic surgeon Dr. Douglas J. Martini for an independent medical evaluation. After obtaining a history, reviewing records and examining plaintiff, Dr. Martini opined that plaintiff had retropatellar fat pad impingement of both knees. Dr. Martini opined that this condition can result from maltracking of the kneecap or trauma and causes the knee to become inflamed, resulting in significant discomfort. According to Dr. Martini, this condition is more of a painful condition than a deteriorative condition of the knees.
31. Dr. Martini did not concur with Dr. Dalldorf's diagnosis of bilateral traumatic chondromalacia patella. Dr. Martini explained that chondromalacia patella is an articular surface condition while retropatellar fat pad impingement is a soft tissue condition. However, Dr. Martini also opined that it was not unusual for two board certified orthopedic surgeons to examine the same patient at different intervals and arrive at different diagnoses.
32. Due to the length of time that passed between her injury and his examination of plaintiff, Dr. Martini was unable to conclusively determine whether plaintiff's fall on September 6, 2009 caused her condition. Nonetheless, Dr. Martini stated that he suspected there was a relationship between the accident and plaintiff's symptoms.
33. Dr. Martini opined that, if plaintiff had chondromalacia patella, it would be reasonable to proceed with arthroscopic surgery if conservative measures failed. Dr. Martini did not opine that knee replacement surgery would be appropriate and he did not know whether plaintiff had reached maximum medical improvement. *Page 11 
34. On April 16, 2010, plaintiff presented to Dr. Dalldorf for the last time. On that date, she continued to have difficulty walking and was experiencing considerable pain in her knees. Plaintiff remained out of work there was duty work available with defendant-employer.
35. On April 22, 2010, plaintiff filed an Amended Form 33 Request that Claim be Assigned for Hearing to appeal the February 26, 2010 Order of Special Deputy Commissioner Jennifer Boyer denying an evaluation with Dr. Dalldorf.
36. On June 3, 2010, defendants filed a Form 33 Requestthat Claim be Assigned for Hearing to review the May 11, 2010 Order of Deputy Commissioner Chrystal Redding Stanback denying defendants' Motion to Reconsider the approval of Dr. Dalldorf as plaintiff's authorized treating physician. Plaintiff remained out of work as defendants did not have light duty work available.
37. By Order of Deputy Commissioner Homick entered on June 7, 2010, these issues were consolidated for a full evidentiary hearing on June 23, 2010.
38. One of defendants' issues was whether the proper procedures were followed in the expedited medical motion setting to determine the authorized treating physician when a February 26, 2010 administrative order denied plaintiff's motion to change treating physicians. As these issues are substantively addressed within this decision, the Full Commission finds any procedural issues to be moot.
39. Based on the preponderance of the evidence in view of the entire record, the Full Commission finds that plaintiff's L4-L5 and L5-S1 back condition was materially aggravated by the September 6, 2009 work incident. *Page 12 
40. Based on the preponderance of the evidence in view of the entire record, the Full Commission further finds that, on September 6, 2009, plaintiff sustained admittedly compensable injuries by accident to her knees, ankles and back.
41. Based on the preponderance of the evidence in view of the entire record, the Full Commission finds that the medical treatment plaintiff has received from Dr. Jones and Dr. Dalldorf has been reasonable and necessary to effect a cure, provide relief and lessen the period of plaintiff's disability.
42. Mr. Murray, the physical therapist, stated that following plaintiff's treatment for her knee conditions, he would be able to provide physical therapy at defendant-employer's facility and conduct a Functional Capacity Evaluation (FCE) to assess any work restrictions in order to assist plaintiff's return to work for defendant-employer.
43. The Full Commission gives greater weight to the medical opinions of Dr. Dalldorf than those of Dr. Barnes due to Dr. Dalldorf's specialization and expertise in treatment of the knee.
44. In her Opinion and Award filed March 11, 2011, Deputy Commissioner Homick designated Dr. Dalldorf and Dr. Jones as plaintiff's treating physicians. Dr. Dalldorf and Dr. Jones practice in Greensboro, North Carolina.
45. Plaintiff lives in Fayetteville, North Carolina. The distance between Plaintiff's residence and the offices of Drs. Dalldorf and Jones is approximately 90 miles each way. Plaintiff testified regarding travel between her home and physicians' offices in Greensboro, "it kills me to sit that long in a car. . . ."
46. Plaintiff has not returned to work since September 21, 2009. The greater weight of the medical evidence of record indicates that plaintiff is capable of some work within the light *Page 13 
duty restrictions assigned by Dr. Dalldorf. As of the date of the hearing before the Deputy Commissioner, plaintiff remained employed by defendant-employer, but no work was available within her restrictions. No evidence was presented to indicate that plaintiff looked for other work within her restrictions.
47. Although plaintiff has taken some college courses, she has been employed by defendant-employer for over 20 years and has limited work experience outside of her employment with defendant-employer. Based on the preponderance of the evidence in view of the entire record, including the evidence regarding plaintiff's education, vocational background and work restrictions, the Full Commission finds that it would be futile for her to seek other employment at this time, particularly in light of her need for additional treatment, including possible bilateral knee arthroscopies.
48. Plaintiff asserts that defendants engaged in improper exparte communication with plaintiff's health care providers. The Full Commission finds that there is insufficient evidence in the record to support a finding that defendants engaged in improperex parte communications with Dr. Barnes, Dr. Martini or Mr. Murray, the physical therapist.
49. As the preponderance of the medical evidence indicates that plaintiff has not yet reached maximum medical improvement, the issue of whether plaintiff is entitled to any permanent partial disability benefits is not ripe for determination at this time.
50. There is insufficient medical evidence of record to address any disability to plaintiff's right shoulder.
51. There is insufficient evidence of record upon which to find that defendants defended this claim unreasonably such as to entitle plaintiff to an award of sanctions pursuant to N.C. Gen. Stat. § 97-88.1. *Page 14 
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 6, 2009, plaintiff sustained compensable injuries by accident to her knees, ankles and back arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Disability refers to the impairment of the injured employee's earning capacity because of the work injury. N.C. Gen. Stat. § 97-2(9) (2009); Peoples v. Cone MillsCorp., 316 N.C. 426, 432, 342 S.E.2d 798, 804 (1986).
3. A fundamental tenant of North Carolina worker's compensation law is that the employee has the burden of proving both the existence and extent of her disability. Clark v. Wal-Mart,360 N.C. 41, 43, 619 S.E. 2d 491, 493 (2005). A claimant can satisfy her burden of proof in one of four ways: (1) the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in obtaining employment; (3) the production of evidence that she is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Prod.Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted). In the instant case, Plaintiff was released to return to work with light duty restrictions, which defendant-employer was unable to accommodate. However, *Page 15 
given her education, vocational background and restrictions, it would be futile for Plaintiff to seek other employment at this time, particularly in light of her need for additional treatment for her knee conditions.
4. As a direct and proximate result of plaintiff's compensable injury by accident on September 6, 2009, plaintiff has not been able to earn the same or greater wages in the same or any other employment since she last worked on September 21, 2009 and continuing. As a result, plaintiff is entitled to receive temporary total disability compensation at the rate of $816.00 per week from September 21, 2009 and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29.
5. As a direct and proximate result of plaintiff's compensable injuries by accident on September 6, 2009, plaintiff is entitled to all medical expenses incurred or to be incurred for her knees, ankles and back, including treatment with Dr. Jones and Dr. Dalldorf, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Dr. Dalldorf and Dr. Jones are approved as plaintiff's treating physicians. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. As there is insufficient evidence of record upon which to conclude that defendants have engaged in ex parte
communications, defendants are not subject to sanctions. See,Porter v. Fieldcrest Cannon,133 N.C. App. 23, 514 S.E.2d 517 (1999); Salaam v. N.C. Departmentof Transp., 122 N.C. App. 83, 468 S.E.2d 536 (1996), disc.review improvidently allowed, 345 N.C. 94, 468 S.E.2d 536 (1996).
7. Under the provisions of N.C. Gen. Stat. § 97-88.1, the Commission may, in its discretion, assess the whole cost of the proceedings upon a party who is found to have brought, prosecuted, or defended a hearing without reasonable ground. N.C. Gen. Stat. § 97-88.1. The *Page 16 
purpose of this section is to deter stubborn, unfounded litigiousness which is inharmonious with the purpose of the Workers' Compensation Act to provide compensation to an injured employee.Sparks v. Mountain Breeze Restaurant Fish House, Inc.,55 N.C. App. 663, 286 S.E.2d 575 (1982). Defendants did not defend this claim without reasonable grounds, and as such, the assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 is neither proper nor justified.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee hereinafter approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $816.00 per week commencing the last day plaintiff worked on September 21, 2009, and continuing until plaintiff returns to work or further order of the Commission.
2. Defendants shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident to her knees, ankles and back for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. This shall include Plaintiff's past treatment with Dr. Jones and Dr. Dalldorf.
3. Within fifteen days of this Order, defendants are to provide counsel for plaintiff with the names of two orthopedic surgeons specializing in treatment of the knees (excluding Dr. Barnes) whose offices are closer to Plaintiff's residence than that of Dr. Dalldorf. Plaintiff may select one of the physicians on this list or Dr. Dalldorf to serve as treating physician for her knee and ankle conditions. *Page 17 
4. Within fifteen days of this Order, defendants are to provide counsel for plaintiff with the names of two neurosurgeons specializing in treatment of the back whose offices are closer to Plaintiff's residence than that of Dr. Jones. Plaintiff may select one of the physicians on this list or Dr. Jones to serve as treating physician for her back condition.
5. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraph One of this Award is approved for plaintiff's counsel and shall be paid by defendants as follows: twenty-five percent of compensation which has accrued shall be paid directly to plaintiff's counsel.
6. Defendants shall pay the costs.
This the ___ day of November, 2011.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ TAMMY R. NANCE COMMISSIONER *Page 1