STATE OF NORTH CAROLINA v. ALBERT BEDFORD

No. COA10-255

(Filed 7 December 2010)

**1. Homicide— second-degree murder instruction refused— evidence of premeditation and deliberation—not negated**

The trial court properly refused to instruct on second-degree murder in a first-degree murder prosecution where the State presented evidence supporting premeditation and deliberation and defendant did not present evidence to negate the State's showing. Voicemail messages supported only an inference of drug impairment and passion but not anger or emotion strong enough to disturb defendant's ability to reason.

**2. Evidence— photographs—decomposed body—illustrative purposes**

The trial court did not abuse its discretion in a first-degree murder prosecution by admitting evidence about decomposition of the victim's body. The photographs were used to illustrate the testimony of the officers who unearthed the body and of the pathologist who conducted the autopsy. The wounds the victim suffered were circumstantial evidence of defendant's premeditation and deliberation.

Appeal by defendant from judgment dated 9 December 2009 by Judge Jay D. Hockenbury in Onslow County Superior Court. Heard in the Court of Appeals 13 October 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Joan M. Cunningham, for the State.*

*Janet Moore for defendant-appellant.*

BRYANT, Judge.

Where the State presented evidence of each element of first-degree murder, including premeditation and deliberation, and no evidence negated these elements, the trial court properly refused to instruct the jury on second-degree murder. Where the victim suffered many distinct injuries to different parts of her body and eighteen photographs were admitted to illustrate relevant testimony regarding an element of the crime for which defendant was charged, the trial court did not abuse its discretion.

STATE v. BEDFORD

[208 N.C. App. 414 (2010)]

*Facts*

Defendant Albert Bedford was tried and convicted of a single count of first-degree murder for the 2008 killing of Vickie Lewis. The evidence at trial tended to show the following. In 2008, defendant had been married to his wife Rosalie for thirty-five years, and Ms. Lewis had been married to her husband Tony for twenty-six years. Despite this, defendant and Ms. Lewis had been romantically involved for several years, a fact known to their spouses and families. The two families had cookouts and spent holidays together at the Lewis home, and defendant and Ms. Lewis sometimes spent the night together at Ms. Lewis' home. Defendant and Ms. Lewis also shared a drug habit, including crack cocaine use.

During 2008, the relationship between defendant and Ms. Lewis deteriorated. In May, Ms. Lewis told her adult daughter that defendant had choked her during an argument. In October, he threatened to kill Ms. Lewis and ran a car she was driving off the road. Several witnesses testified about defendant's behavior at the time, stating that he had been agitated, acting crazy, and in a jealous rage. In November, defendant threatened Ms. Lewis with a knife and took her keys. The State presented recordings of voicemail messages to Ms. Lewis that defendant left between 13 and 21 November 2008, along with documentation of more than 200 phone calls defendant made to her. The messages ranged from tearful pleading for Ms. Lewis to return to defendant to profanity-ridden rages accusing Ms. Lewis of mistreating him. Mr. Lewis last saw his wife on 18 November when they discussed plans to do some Thanksgiving shopping together on 24 November. When she had not returned home on 24 November, Mr. Lewis began looking for his wife and he eventually reported her missing on 27 November 2008.

Because of the holiday weekend, Detective Thomas Robinson of the Onslow County Sheriff's Department began his investigation on 2 December 2008. On 3 December, Det. Robinson interviewed defendant at the sheriff's department; defendant claimed he had last seen Ms. Lewis on 23 November. On 4 December, Det. Robinson and another officer went to defendant's residence where they noticed a white van in front of the home. The van's windows were rolled down and it smelled of cleaning solvent; the officers also noted that the back seat was missing and the carpet appeared to have been washed. Defendant consented to a search of the van and a large bloodstain was found under the carpet; tests revealed that the blood belonged to

Ms. Lewis. On 5 December, Det. Robinson interviewed defendant again after giving him *Miranda* warnings. Defendant first explained that the blood was from Ms. Lewis' nosebleeds and menstruation. He also stated that he had last seen her on 24 November. When Det. Robinson and crime scene investigators continued to confront defendant with the evidence and tell him it didn't match his explanation, he began crying and stated that he should have burned the van. However, defendant denied killing Ms. Lewis.

On 6 December, defendant's daughter contacted law enforcement and asked them to come to her property to check some recently disturbed dirt and leaves on the wooded lot. She testified that defendant had driven his van to her home on 25 November. On that day, defendant had arrived to drop off items for Thanksgiving dinner. He had chatted with his daughter and then spent about thirty minutes outside alone on the property. Defendant had then come back inside to watch television and play with his grandson. On 6 December, investigators found Ms. Lewis' decomposing body wrapped in a quilt and tarp in a shallow grave on defendant's daughter's property. Her head had been struck multiple times and her nose, both eye sockets and her upper and lower jaw bones had been broken. The pathologist testified that Ms. Lewis's injuries were consistent with being hit repeatedly with a heavy-edged object like a brick or two-by-four piece of lumber. Bruising indicated that Ms. Lewis had been alive for at least ten to fifteen minutes after she was beaten about the head. Ms. Lewis' body also showed other injuries, including a slit throat and stab wounds in the chest and thigh. The pathologist opined that the head injuries and slit throat had been the causes of Ms. Lewis' death. The pathologist also explained decomposition of bodies and illustrated her testimony with color photographs of Ms. Lewis' corpse which were projected onto a six by four foot screen in the courtroom.

At the close of all evidence, defendant asked the court to instruct the jury on second-degree murder, but the trial court denied the request and instructed solely on first-degree murder under theories of premeditation and deliberation. The jury returned a verdict of guilty of first-degree murder and the trial court sentenced defendant to life in prison without parole. Defendant appeals.

---

Defendant makes two arguments on appeal: that the trial court erred in (I) denying his motion for a jury instruction on second-degree murder, and (II) admitting irrelevant and inflammatory evidence regarding Ms. Lewis' decomposition into evidence.

*I*

**[1]** Defendant first argues that the trial court erred in denying his motion for a jury instruction on second-degree murder. We disagree.

"[A] defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support it." *State v. Johnson*, 317 N.C. 193, 205, 344 S.E.2d 775, 782 (1986).

> The test in every case involving the propriety of an instruction on a lesser grade of an offense is not whether the jury could convict defendant of the lesser crime, but whether the State's evidence is positive as to each element of the crime charged and whether there is any conflicting evidence relating to any of these elements.

*State v. Leroux*, 326 N.C. 368, 378, 390 S.E.2d 314, 322, *cert. denied*, 498 U.S. 871, 112 L. Ed. 2d 155 (1990). "First-degree murder is, *inter alia,* the unlawful killing of a human being committed with malice, premeditation, and deliberation." *State v. Geddie*, 345 N.C. 73, 94, 478 S.E.2d 146, 156 (1996), *cert. denied*, 522 U.S. 825, 139 L. Ed. 2d 43 (1997); *see also* N.C. Gen. Stat. § 14-17 (2009). "The unlawful killing of a human being with malice but without premeditation and deliberation is murder in the second degree." *Id.*

> Premeditation and deliberation generally must be established by circumstantial evidence, because they ordinarily are not susceptible to proof by direct evidence. "Premeditation" means that the defendant formed the specific intent to kill the victim some period of time, however short, before the actual killing. "Deliberation" means an intent to kill executed by the defendant in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.

*State v. Bonney*, 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991) (internal citations omitted).

Circumstances that may tend to prove premeditation and deliberation include:

> (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulties between the parties; (5) the dealing of

lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

*State v. Gladden,* 315 N.C. 398, 430-31, 340 S.E.2d 673, 693, *cert. denied,* 479 U.S. 871, 93 L. Ed. 2d 166 (1986). The nature and number of the victim's wounds can also support an inference of premeditation and deliberation. *Id.* at 431, 340 S.E.2d at 693. "If the evidence satisfies the State's burden of proving each element of first-degree murder, including premeditation and deliberation, and there is no evidence to negate these elements other than defendant's denial, the trial court should exclude second-degree murder from the jury's consideration." *Geddie,* 345 N.C. at 94, 478 S.E.2d at 156 (citation omitted).

In considering the existence of premeditation and deliberation, "the term 'cool state of blood' does not mean an absence of passion and emotion. One may deliberate, may premeditate, and may intend to kill after premeditation and deliberation, although prompted and, to a large extent, controlled by passion at the time." *Bonney,* 329 N.C. at 77, 405 S.E.2d at 154 (internal citations omitted). "The fact that a defendant was angry or emotional will not negate the element of deliberation during a killing unless there was evidence the anger or emotion was strong enough to disturb [the] defendant's ability to reason." *State v. Rios,* 169 N.C. App. 270, 280, 610 S.E.2d 764, 771 (citation omitted), *appeal dismissed and disc. review denied,* 360 N.C. 75, 623 S.E.2d 37 (2005). "[A] person may be excited, intoxicated and emotionally upset, and still have the capability to formulate the necessary plan, design, or intention to commit murder in the first[-]degree." *State v. Mash,* 323 N.C. 339, 347, 372 S.E.2d 532, 537 (1988) (internal quotation marks and citation omitted). Further, "[n]o inference of the absence of deliberation and premeditation arises from intoxication, as a matter of law." *Id.* (internal quotation marks and citation omitted).

Here, on appeal, defendant contends that the evidence would have supported a reasonable inference by the jury, that defendant killed Ms. Lewis in a "frenzied, crack-fueled explosion of [his] long-simmering "rage of jealousy." However, as noted above, premeditation and deliberation do not imply a lack of passion, anger or emotion. Nor does defendant's possible drug intoxication at the time of the killing support an inference that he did not premeditate and deliberate in his actions. The State presented evidence regarding: defendant's conduct and statements before the killing, including threats to

harm Ms. Lewis; ill-will and previous difficulties between the parties; lethal blows rendered after Ms. Lewis was been felled and rendered helpless; the brutality of the killing; and the extreme nature and number of Ms. Lewis' wounds. This evidence supported the State's burden of proving premeditation and deliberation in the killing of Ms. Lewis. Defendant did not present evidence to negate the State's showing on these *Gladden* circumstances. The only evidence defendant cites to show his state of mind were the voicemail messages heard by the jury. These messages support only an inference of drug impairment and passion, and do not indicate "anger or emotion . . . strong enough to disturb defendant's ability to reason[,]" such as would negate the elements of premeditation and deliberation. *Rios*, 169 N.C. App. at 280, 610 S.E.2d at 771. This argument is overruled.

*II*

[2] Defendant next argues that the trial court erred in admitting irrelevant and inflammatory evidence regarding Ms. Lewis' decomposition. We disagree.

We review a trial court's decision to admit evidence under the balancing test of Rule 403 of the North Carolina Rules of Evidence for an abuse of discretion. *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). "Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in light of the illustrative value of each likewise lies within the discretion of the trial court." *Id.* (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citation omitted).

Rule 403 of the North Carolina Rules of Evidence provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2009).

> Photographs are usually competent to explain or illustrate anything that is competent for a witness to describe in words, and properly authenticated photographs of a homicide victim may be introduced into evidence under the trial court's instructions that their use is to be limited to illustrating the witness's testimony. . . . Photographs may also be introduced in a murder trial to illustrate

testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree, and for this reason such evidence is not precluded by a defendant's stipulation as to the cause of death. Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury.

*Hennis,* 323 N.C. at 283-84, 372 S.E.2d at 526 (internal quotation marks and citations omitted). "As a general rule, the fact that a photograph is gory and may tend to arouse prejudice does not render it inadmissible, so long as it is otherwise relevant and material. . . . This holds true even where the photographs depict remains in an advanced state of decomposition." *State v. Harris,* 323 N.C. 112, 126-27, 371 S.E.2d 689, 698 (1988) (internal citations omitted). "This Court has recognized, however, that when the use of photographs that have inflammatory potential is excessive or repetitious, the probative value of such evidence is eclipsed by its tendency to prejudice the jury." *Hennis,* 323 N.C. at 284, 372 S.E.2d at 526.

Here, defendant filed a pretrial motion to prevent the State from introducing three photographs of Ms. Lewis' body, taken just after it had been removed from the shallow grave. The State voluntarily withdrew one of the photographs. In denying defendant's motion, the trial court correctly noted the standard under Rule 403 to be applied, and concluded that, because the two photographs showed different portions of the body, they were not repetitious. These photographs of Ms. Lewis' decomposed body were used to illustrate the testimony of law enforcement officers who unearthed her body. We see no abuse of discretion in the trial court's decision regarding these photographs.

The trial court also admitted twenty color photographs of Ms. Lewis' decomposing body to illustrate the testimony of the pathologist who conducted the autopsy. At trial, defendant did not object to any specific photographs, but rather to the number and cumulative effect of the photographs. The State voluntarily withdrew two of the photographs after an in-chambers conference between the trial court and counsel to review the photographs. The trial court allowed the remaining photographs into evidence after determining that they showed different views of Ms. Lewis' body and her wounds with little repetition. Four of the photographs showed Ms. Lewis' reconstructed skull; in those, the bones had been cleaned. The photographs were projected onto a six-foot by eight-foot screen near the bench.

STATE v. BEDFORD

[208 N.C. App. 414 (2010)]

Defendant argues that the trial court abused its discretion in admitting these photographs because they had little probative value, but were highly prejudicial due to their graphic nature. Defendant notes that he offered to stipulate to the victim's identity and did not contest the cause of death. However, as the Supreme Court noted in *Hennis*, "[p]hotographs may . . . be introduced in a murder trial to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree, and for this reason such evidence is not precluded by a defendant's stipulation as to the cause of death." 323 N.C. at 284, 372 S.E.2d at 526. As noted in our discussion of defendant's argument I *supra*, the pathologist's testimony about the dealing of lethal blows after Ms. Lewis was rendered helpless but still alive, and the brutality and number of her wounds were circumstantial evidence of defendant's premeditation and deliberation, elements of first-degree murder. We conclude that the trial court did not abuse its discretion in admitting eighteen photographs to illustrate relevant testimony regarding an element of the crime for which defendant was charged, particularly where the victim suffered so many distinct injuries to different parts of her body. This argument is overruled.

In his brief, defendant challenges testimony by the pathologist about the process of decomposition and to the manner of projection of the photographs. However, as he acknowledges, defendant did not raise these objections in the trial court, and thus, would be entitled only to our review for plain error. Because defendant does not argue plain error in his brief to this Court, he has waived appellate review of his arguments. *See State v. Braxton*, 352 N.C. 158, 196, 531 S.E.2d 428, 450-51 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); *see also State v. Mobley*, —— N.C. App. ——, ——, 684 S.E.2d 508, 510 (2009), *disc. review denied*, 363 N.C. 809, 692 S.E.2d 393 (2010).

No error.

Judges STEELMAN and ERVIN concur.