STATE OF NORTH CAROLINA v. CEASAR ARMANDO LAUREAN

No. COA11-569

(Filed 1 May 2012)

**1. Homicide—first-degree murder—failure to instruct on lesser-included offense—second-degree murder—no evidence to support instruction**

The trial court did not err in a first-degree murder case by failing to submit the lesser-included-offense of second-degree murder to the jury. The facts in the case fully supported a jury verdict of first-degree murder and there was no evidence presented to support an instruction on second-degree murder.

**2. Evidence—behavior of victim—not relevant to charges—properly excluded**

The trial court did not err in a first-degree murder case by excluding evidence of the victim's behavior. The specific instances of conduct for which the victim received minor disciplinary infractions were not relevant to the issues presented to the jury.

Appeal by defendant from judgment entered 23 August 2010 by Judge W. Osmond Smith in Wayne County Superior Court. Heard in the Court of Appeals 16 November 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen, for defendant-appellant.*

BRYANT, Judge.

Where the trial court did not err in failing to submit to the jury the lesser included offense of second-degree murder and where it did not err by excluding specific instances of conduct as evidence of the victim's behavior while allowing evidence regarding the victim's reputation for truthfulness, we uphold the judgment of the trial court.

In January 2008, for offenses occurring in December 2007, defendant Corporal Ceasar Armando Laurean of the United States Marine Corps was indicted on charges of first-degree murder, robbery with a dangerous weapon, financial transaction card theft, attempted misdemeanor transaction card fraud, and obtaining property by false pre-

tenses. The State dismissed the charge of obtaining property by false pretenses prior to trial. This case came on for trial during the 10 August 2010 Criminal Session of Wayne County Superior Court.

At trial, evidence was presented that in February 2007, defendant was stationed at Camp Lejeune in Onslow County and assigned to the Separations Section, 2d Marine Logistics Group. There, defendant assumed the position of staff Non-Commissioned Officer in Charge (NCOIC). The duties of the NCOIC included supervising the marines in the unit, including Lance Corporal Maria Lauterbach. Following a series of disciplinary infractions by Lance Cpl. Lauterbach, the Officer in Charge (OIC), Chief Warrant Officer (CWO) Caroline Bier, instructed defendant to counsel Lauterbach.

In May 2007, Lance Cpl. Lauterbach accused defendant of a sexual assault that she alleged had occurred six weeks earlier. Defendant denied the allegation and an investigation ensued. Lauterbach was transferred to another section at Camp Lejeune, and a military protective order was issued commanding the separation of Lance Cpl. Lauterbach and defendant. Despite the order barring contact between the two, defendant and Lance Cpl. Lauterbach were seen together on multiple occasions, such as, in the giftware department of the Base Exchange and at a local dry cleaner. In June 2007, Lance Cpl. Lauterbach learned that she was pregnant. She claimed the pregnancy was the result of the sexual assault.

On Friday, 14 December 2007, Lance Cpl. Lauterbach worked at her unit from 7:30 a.m. until 3:30 p.m. At 4:30 p.m., her roommate found a note stating "Sorry, but I cannot take this Marine Corps life anymore, so I am going away. Sorry for the inconvenience. Maria." The note was turned over to a warrant officer in Lauterbach's section. Lauterbach's mother filed a missing person's report.

During the investigation into her disappearance, it was determined that on 14 December 2007, Lance Cpl. Lauterbach withdrew $700.00 from her bank account via an ATM machine and, at 5:00 p.m. that day, purchased a bus ticket for travel the next day from Jacksonville, North Carolina to El Paso, Texas. The ticket agent at the bus station was the last person to acknowledge seeing Lance Cpl. Lauterbach alive.

On 16 December 2007, defendant purchased supplies to build a fire pit in his back yard. Defendant's neighbors later testified that around the holidays in December 2007, defendant had a bonfire in his backyard—an event that had not previously occurred. On 20

December, Lauterbach's cell phone was found near the entrance to Camp Lejeune. On 24 December, a man who attempted to obscure his face from the video camera at an ATM but resembled defendant, used Lauterbach's debit card to access her bank account in an attempt to withdraw funds.

On 8 January 2008, defendant was interviewed about the disappearance of Lance Cpl. Lauterbach by the Naval Criminal Investigative Service. Following the interview, defendant asked what would happen to the investigation involving Lauterbach's accusations of sexual assault against him if she did not come back. On 11 January 2008, defendant did not report for work.

On 11 and 12 January 2008, investigators searched defendant's home pursuant to a search warrant. Blood stains later determined to contain the DNA of Lance Cpl. Lauterbach were found on numerous items in the garage. Lauterbach's body and that of her fetus were found burned and buried in the fire pit in defendant's back yard. A search of defendant's computer revealed that on 8 January at 11:30 a.m., defendant performed a computer search of Puerto Vallarta, Mexico.

Defendant had fled in early January but was apprehended near San Juan de la Vina, a small town located in Michoacán, Mexico, on 10 April 2008. Defendant was extradited back to the United States to stand trial. Due to pretrial publicity, a change of venue was granted. The case moved from Onslow County to Wayne County, and defendant received a trial by jury in Wayne County Superior Court.

Defendant was convicted of first-degree murder, financial transaction card theft, and attempted financial transaction card fraud. Defendant was found not guilty of robbery with a dangerous weapon. Judgment on all offenses was consolidated, and defendant was sentenced to life imprisonment without parole. Defendant appeals.

---

On appeal, defendant raises the following questions: did the trial court err (I) by failing to submit the lesser-included-offense of second-degree murder to the jury; and (II) by excluding evidence of the victim's behavior.

I

[1] Defendant argues that the trial court erred by failing to instruct the jury on the lesser included offense of second-degree murder. Defendant acknowledges that the evidence presented was sufficient to support an instruction on first-degree murder, necessarily acknow-

ledging support for a finding of premeditation and deliberation. However, defendant points out that there was no evidence presented to illustrate the circumstances leading up to the infliction of the fatal injury. On this basis, defendant contends that the jury should have been allowed to consider whether defendant formed the intent to kill without premeditation and deliberation, and, thus, the trial court erred in denying his request for an instruction on second-degree murder. We disagree.

We review the trial court's denial of the request for an instruction on the lesser included offense de novo. *E.g. State v. Ligon*, 332 N.C. 224, 240-41, 420 S.E.2d 136, 145-46 (1992); *State v. Dyson*, 165 N.C. App. 648, 653-55, 599 S.E.2d 73, 77 (2004) (de novo review of whether a trial court's denial of defendant's request for a lesser included offense instruction was proper).

"It is an elementary rule of law that a trial judge is required to declare and explain the law arising on the evidence and to instruct according to the evidence." *State v. Strickland,* 307 N.C. 274, 284, 298 S.E.2d 645, 652 (1983), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986). "[D]ue process requires an instruction on a lesser-included offense only 'if the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater.' " *State v. Conaway*, 339 N.C. 487, 514, 453 S.E.2d 824, 841 (1995) (citing *Beck v. Alabama*, 447 U.S. 625, 635, 65 L. Ed. 2d 392, 401 (1980) (holding that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [the court] is constitutionally prohibited from withdrawing that option from the jury . . . ." *Beck*, 447 U.S. at 638, 65 L. Ed. 2d at 403)). However, "[t]he trial court should refrain from 'indiscriminately or automatically' instructing on lesser included offenses. Such restraint ensures that the jury's discretion is . . . channelled [sic] so that it may convict a defendant of only those crimes fairly supported by the evidence." *State v. Taylor*, 362 N.C. 514, 530, 669 S.E.2d 239, 256 (2008) (citations, quotations, and brackets omitted).

"Where the State's evidence is positive as to each element of the offense charged and there is no contradictory evidence relating to any element, no instruction on a lesser included offense is required." *State v. Millsaps*, 356 N.C. 556, 562, 572 S.E.2d 767, 772 (2002) (citation omitted). Moreover, " 'a defendant is not entitled to an instruction on a lesser included offense merely because the jury could

possibly believe some of the State's evidence but not all of it.'" *Taylor*, 362 N.C. at 533, 669 S.E.2d at 257 (quoting *State v. Annadale*, 329 N.C. 557, 568, 406 S.E.2d 837, 844 (1991)).

> First-degree murder is, *inter alia*, the unlawful killing of a human being committed with malice, premeditation, and deliberation. "The unlawful killing of a human being with malice but without premeditation and deliberation is murder in the second degree."

*State v. Bedford*, ___ N.C. App. ___, ___, 702 S.E.2d 522, 526-27 (2010) (quoting *State v. Geddie*, 345 N.C. 73, 94, 478 S.E.2d 146, 156 (1996)) (citing N.C. Gen. Stat. § 14-17 (2009)).

> The well-established rule for submission of second-degree murder as a lesser-included offense of first-degree murder is: "If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree . . . and there is no evidence to negate these elements other than [the] defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder."

*State v. Locklear*, 363 N.C. 438, 454-55, 681 S.E.2d 293, 306 (2009) (quoting *Strickland*, 307 N.C. at 293, 298 S.E.2d at 658).

Here, the evidence presented illustrates that Lance Cpl. Lauterbach made a formal accusation of rape on 11 May 2007. She also maintained that the assault resulted in her pregnancy. An Article 32 hearing to present the findings of an investigation to a military court and determine whether to proceed to a general court martial was scheduled to be held in December 2007 or January 2008.

It is clear from the evidence that defendant was very concerned about the sexual assault allegation, the pregnancy, and the investigation. Lance Cpl. Blake Costa testified that defendant admitted to a sexual encounter with Lance Cpl. Lauterbach—though he described it as consensual—and acknowledged that the situation was temporarily affecting his career. Costa testified that defendant asked him to help defendant make contact with Lauterbach. Defendant stated that he wanted Lauterbach to move to Mexico, the purpose for which was to discredit her as a deserter and help salvage his military career.

On 14 December 2007, Lance Cpl. Lauterbach withdrew $700.00 from her bank account and purchased a bus ticket to El Paso, Texas. Shortly thereafter, she disappeared. At some point in December 2007, a blue Hyundai, had been observed parked at defendant's house. On 7 January 2008, Lance Cpl. Lauterbach's blue Hyundai was found at the Jacksonville bus station. Law enforcement was unable to retrieve identifiable prints from the vehicle.

In early January, following an interview with naval investigators in the investigation of Lance Cpl. Lauterbach's disappearance, defendant inquired as to how Lauterbach's disappearance would affect the investigation into her allegations against him. Shortly thereafter, defendant fled. On 11 and 12 January 2008, investigators searched defendant's home. Blood stains were found in the garage, specifically, on a black storage container, a paint can, a pink plastic swim raft, tan pillow case, painting equipment, a pegboard on the garage wall, a white plastic bag, an infant swing, a box, the garage wall, the ceiling, and the garage floor. These blood stains contained Lance Cpl. Lauterbach's DNA. In the back yard, Lauterbach's body and that of her fetus were found in the charred earth of defendant's firepit. Defendant's neighbors testified that around the holidays in December 2007, defendant had a bonfire in his back yard—the first and only time that such an event had ever occurred there.

On appeal, defendant concedes that the evidence presented warranted an instruction on the charge of first-degree murder, necessarily acknowledging support for findings of premeditation and deliberation. However, defendant asserts that because the evidence failed to illustrate the circumstances immediately preceding Lance Cpl. Lauterbach's murder, the jury should have been allowed to consider that he formed the intent to kill absent premeditation and deliberation and, therefore, was entitled to an instruction on second-degree murder. Defendant asserts that an absence of evidence (the failure to illustrate the exact circumstances surrounding the murder) entitles him to a jury instruction on second-degree murder, while simultaneously acknowledging the sufficiency of the evidence to support an instruction on first-degree murder. Defendant's assertions must fail.

On the evidence presented, an instruction by the trial court on the charge of second-degree murder would be, defendant must concede, an instruction for which no evidence was presented in support thereof. An instruction on the charge of second-degree murder requires that the unlawful killing of a human being occur without pre-

meditation and deliberation. *See Bedford*, ____ N.C. App. at ____, 702 S.E.2d at 526-27 (citing N.C. Gen. Stat. § 14-17 (2009). Defendant fails to direct this Court's attention to any evidence that Lance Cpl. Lauterbach was killed without premeditation and deliberation. *See Locklear*, 363 N.C. 454-55, 681 S.E.2d at 306 (" 'If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree . . . and there is no evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder.' " (quoting *Strickland*, 307 N.C. at 293, 298 S.E.2d at 658)). Defendant does not deny that he committed a homicide, he simply challenges what he refers to as a lack of evidence of premeditation and deliberation. However, the facts in this case fully support a jury verdict of first-degree murder. *See State v. Moses*, 350 N.C. 741, 775, 517 S.E.2d 853, 874 (1999) (Our Supreme Court "has stated 'the finding of premeditation and deliberation indicates a more cold-blooded and calculated crime.' " (quoting *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990)). Accordingly, we overrule defendant's argument.

## II

**[2]** Next, defendant argues that the trial court erred by excluding evidence of specific instances of conduct by Lance Cpl. Lauterbach that led to defendant imposing military discipline on her immediately prior to her accusation of rape. Defendant argues that such evidence established that Lauterbach had a motive to falsely accuse defendant of rape and was admissible under Rule of Evidence 404(b). We disagree.

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules. Evidence which is not relevant is not admissible." N.C. Gen. Stat. § 8C-1, Rule 402 (2011). "A trial court's rulings on relevancy are technically not discretionary, though we accord them great deference on appeal." *State v. Lane*, 365 N.C. 7, 27, 707 S.E.2d 210, 223 (2011) (citing *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991); *also State v. Lawrence*, 352 N.C. 1, 17-18, 530 S.E.2d 807, 817-18 (2000) (reviewing trial court's exclusion of expert witness testimony on behalf of defendant for error and finding none)).

" 'In a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible.' " *State v. Grant*, 178 N.C. App. 565, 573, 632 S.E.2d 258, 265 (2006) (brackets omitted) (quoting *State v. Bruton*, 344 N.C. 381, 386, 474 S.E.2d 336, 340 (1996)). However, under Rule of Evidence 404(b),

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. R. Evid. 404(b) (2011). ·

> To be admissible under Rule 404(b), evidence of a prior crime or incident must be sufficiently similar to the incident at issue. *State v. Boyd*, 321 N.C. 574, 364 S.E.2d 118 (1988). Even if evidence is sufficiently similar to be admissible under Rule 404(b), it is nevertheless subject to the relevancy requirements and balancing test of Rule 403. *State v. Thibodeaux*, 352 N.C. 570, 532 S.E.2d 797 (2000) (citation omitted), *cert. denied*, 531 U.S. 1155, 148 L. Ed. 2d 976 (2001).

*State v. Nance*, 157 N.C. App. 434, 438, 579 S.E.2d 456, 459 (2003).

Here, defendant was indicted on charges of first-degree murder, robbery with a dangerous weapon, attempted misdemeanor financial transaction card fraud, obtaining property by false pretenses, and financial transaction card theft stemming from the murder of Lance Cpl. Lauterbach and the use of her debit card in an attempt to withdraw funds from her bank account.

At trial, defendant sought to question CWO Bier and the OIC of the legal division, CWO Joel Larsen, about Lance Cpl. Lauterbach's disciplinary infractions which led to CWO Bier's request that defendant counsel Lauterbach. Defendant argued that this information was relevant because it established Lauterbach's motive for making a false allegation of rape against him. In a hearing outside of the jury's presence, the trial court expressed concern that the jury could reasonably be left with the uncontested assertion that defendant raped Lauterbach. The trial court ruled that defendant would be allowed to question CWO Larsen regarding Lauterbach's reputation of truthfulness, including the allegation of rape but, because the character trait was not an essential element of a charge or defense, sustained the

State's objections as to specific instances of conduct leading to disciplinary infractions. The court further instructed CWO Bier, before her testimony, that while she was allowed to disclose the fact that Lauterbach received counseling, she was not to disclose the basis for such counseling.

We agree the question of whether Lance Cpl. Lauterbach's accusation of rape was grounded in fact or falsehood was not before the jury. Moreover, Lauterbach's specific instances of conduct unrelated to defendant shed no light upon the crimes for which defendant was charged. *See Grant*, 178 N.C. App. at 573, 632 S.E.2d at 265. Therefore, the specific instances of conduct for which Lance Cpl. Lauterbach received minor disciplinary infractions were not relevant to the issues presented to the jury and were properly excluded from evidence presented at trial.

Accordingly, defendant's argument is overruled.

No error.

Judges CALABRIA and STROUD concur.