**STATE v. HATCHER**

[231 N.C. App. 114 (2013)]

STATE OF NORTH CAROLINA
v.
LADARRIUS TAVON HATCHER

No. COA13-632

Filed 3 December 2013

1.  **Homicide—handgun discharge—second-degree murder—
    evidence of malice—not sufficient—remanded for involun-
    tary manslaughter sentencing**

    The trial court erred in denying defendant's motion to dismiss
    the charge of murder where the State failed to present sufficient
    evidence of malice. A group of young men were debating whether a
    9mm pistol that one of them had would fire .380 ammunition; they
    loaded and attempted to fire the gun outside without success;
    they returned inside with the gun; there was a gunshot when defen-
    dant and the victim were alone in a room; and the victim was killed.
    The evidence was at best sufficient only to raise a suspicion of
    malice; however, there was sufficient evidence to support a finding
    that defendant was culpably negligent in handling the pistol and the
    case was remanded for sentencing on involuntary manslaughter.

2.  **Criminal Law—prosecutor's argument—murder convic-
    tion—errors concerning intent—remanded for involuntary
    manslaughter sentencing—no prejudice**

    There was no plain error in a murder prosecution where the
    trial court did not limit cross-examination and did not intervene
    *ex mero motu* in the prosecutor's closing argument where all of the
    alleged errors related to the State's attempt to show an intentional
    killing. Even assuming that the trial court erred as contended,
    defendant cannot show prejudice given that his murder conviction
    was reversed and the case was remanded for resentencing on
    involuntary manslaughter.

Appeal by defendant from Judgment entered on or about
16 November 2012 by Judge Walter H. Godwin, Jr. in Superior Court,
Edgecombe County. Heard in the Court of Appeals 22 October 2013.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General
Brandon L. Truman, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate
Defender Constance E. Widenhouse, for defendant-appellant.*

STROUD, Judge.

Ladarrius Hatcher ("defendant") appeals from the judgment entered on or about 16 November 2012 after a jury found him guilty of murder in the second degree. For the following reasons, we vacate defendant's conviction for murder in the second degree and remand for entry of judgment and resentencing on involuntary manslaughter.

I. Background

On 10 January 2011, defendant was indicted by a grand jury in Edgecombe County for the murder of Murray Chamberlin by short form indictment. Defendant pled not guilty and proceeded to jury trial. At trial, the State's evidence tended to show the following:

On 30 November 2010, defendant, Mr. Chamberlin, Kalik Davis, and several other friends were at the home owned by Mr. Davis's mother. The group of friends had known each other for years and often spent time together. At the time, Mr. Chamberlin was seventeen years old, Mr. Davis was fifteen, and defendant was eighteen. Mr. Chamberlin had a 9mm pistol with him. Defendant asked if he could see the gun, so Mr. Chamberlin handed it to him. Defendant noticed it was unloaded when he pulled out the ammunition clip. Defendant asked Mr. Chamberlin if he had ammunition for the gun. Mr. Chamberlin responded that he had .380 caliber bullets and pulled out a plastic bag of bullets from his pocket. Defendant and Mr. Chamberlin began discussing whether a 9mm handgun would fire .380 caliber bullets. Defendant asserted that it would fire, while Mr. Chamberlin disagreed. Defendant loaded the gun with five or six .380 bullets and went outside, accompanied by Mr. Davis and Mr. Chamberlin.

Once outside, defendant attempted to fire the gun into the air several times, but the gun would not discharge. As he was trying to fire the gun, two of the bullets fell out. The three then gave up trying to fire the gun and went back inside to Mr. Davis's room. Once back in the room, Mr. Chamberlin sat near the rear of the bed, Mr. Davis sat near the front, and defendant sat on a nearby stool with the gun in his lap. Defendant began playing with the gun again, looking at it and pointing it around, though not aiming it at anyone. Mr. Davis asked defendant to watch where he was aiming the gun. Mr. Davis then left the bedroom to retrieve his cellphone. He overheard Mr. Chamberlin telling defendant to "Get that fucking gun out of my face" in a "low," or "medium" tone of voice.

Shortly thereafter, Mr. Davis heard one gunshot from his bedroom. He did not react immediately and kept trying to call his friends because

he did not think anything had happened. Mr. Davis went back to his room and saw Mr. Chamberlin laying on the bed. He asked defendant what he had done, then ran out of the house.

When Mr. Davis returned to his house, he saw defendant dragging Mr. Chamberlin's body outside. The police later found his body naked, hidden under a pile of leaves behind a nearby abandoned house. They found Mr. Chamberlin's clothes in a trashcan. Mr. Davis was the only witness called by the State who was present when Mr. Chamberlin was shot.

The forensic pathologist who examined Mr. Chamberlin found one fatal bullet hole in Mr. Chamberlin's head. He could not determine the distance from which the bullet had been fired. He also found abrasions and contusions on Mr. Chamberlin's body, but could only testify that the abrasions were consistent with being dragged and that the contusions were consistent with blunt force trauma. The pathologist found no evidence of defensive wounds.

After the State rested, defendant moved to dismiss the first degree murder charge. The trial court denied the motion. Defendant then presented the testimony of several witnesses, including Mr. Davis, and testified on his own behalf.

Defendant testified that he and Mr. Chamberlin were close friends who had known each other for over eight years. He testified that they had no problems with each other. Defendant's story largely matched that of Mr. Davis until the point Mr. Davis left the room. Defendant testified that after Mr. Davis left, he continued "messing with" the gun, trying to figure out why it would not fire. He then cocked the gun and it discharged, hitting Mr. Chamberlin. He testified that when he saw Mr. Chamberlin fall over, bleeding, he began sweating and crying. When Mr. Davis came back and saw Mr. Chamberlin laying on the bed, Mr. Davis asked defendant what he had done. Defendant said it was an accident, and that he made a mistake and shot Mr. Chamberlin.[1] Defendant admitted hiding Mr. Chamberlin's body behind the abandoned house. He explained that after the shooting he was scared of going to jail and panicked. Defendant turned himself in and was arrested the next day.

At the close of all evidence, defendant renewed his motion to dismiss the murder charge. The trial court again denied the motion. The trial court instructed the jury on first degree murder, second degree murder, and

---

1. Both defendant and Mr. Davis testified that he had said it was an accident.

involuntary manslaughter. The jury returned a verdict of guilty of second degree murder. Defendant was sentenced to 157 months to 198 months imprisonment. Defendant gave oral notice of appeal in open court.

## II. Motion to Dismiss

**[1]**  Defendant first argues that the trial court erred in denying his motion to dismiss the charge of murder because there was insufficient evidence of malice. We agree.

> The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.

*State v. Teague*, ___ N.C. App. ___, ___, 715 S.E.2d 919, 923 (2011), *app. dismissed and disc. rev. denied*, 365 N.C. 547, 742 S.E.2d 177 (2012).

"The defendant's evidence, unless favorable to the State, is not to be taken into consideration, except when it is consistent with the State's evidence, the defendant's evidence may be used to explain or clarify that offered by the State." *State v. Abshire*, 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (citations and quotation marks omitted). "Although the evidence need not point unerringly toward the defendant's guilt so as to exclude all other reasonable hypotheses, it is well established that evidence which is sufficient only to raise a suspicion or conjecture of guilt is insufficient to withstand a motion to dismiss." *State v. Williams*, ___ N.C. App. ___, ___, 741 S.E.2d 9, 22 (2013) (citations, quotation marks, .and brackets omitted).

"The unlawful killing of a human being with malice but without premeditation and deliberation is murder in the second degree." *State v. Bedford*, 208 N.C. App. 414, 417, 702 S.E.2d 522, 526-27 (2010) (citation and quotation marks omitted).

> What constitutes malice varies depending upon the facts of each case. Our courts have specifically recognized three kinds of malice:

> One connotes a positive concept of express hatred, ill-will
> or spite, sometimes called actual, express or particular
> malice. Another kind of malice arises when an act which
> is inherently dangerous to human life is done so recklessly
> and wantonly as to manifest a mind utterly without regard
> for human life and social duty and deliberately bent on
> mischief. Both these kinds of malice would support a con-
> viction of murder in the second degree. There is, however,
> a third kind of malice which is defined as nothing more
> than that condition of mind which prompts a person to
> take the life of another intentionally without just cause,
> excuse, or justification.

*State v. Grice*, 131 N.C. App. 48, 53, 505 S.E.2d 166, 169 (1998) (citations
and quotation marks omitted), *disc. rev. denied*, 350 N.C. 102, 533 S.E.2d
473 (1999). The State has not argued either at trial or on appeal that the
evidence supports either of the first two kinds of malice.[2] The only the-
ory of malice relied on by the State is an intentional killing. Therefore,
we must consider whether there was sufficient evidence that defendant
intentionally shot and killed Mr. Chamberlin.

Here, the State points us to two pieces of evidence which it claims
supports the theory of an intentional shooting: (1) that Mr. Chamberlin
said, "Get that fucking gun out of my face" before being shot, and
(2) that defendant fled the scene and hid Mr. Chamberlin's body.

As to the first piece of evidence, although we must consider the
evidence in the light most favorable to the State, that does not mean
we must take pieces of evidence out of context. Before Mr. Chamberlin
told defendant to "[g]et that fucking gun out of my face," defendant had
been playing with the gun. Defendant and Mr. Chamberlin were debating
whether a .380 bullet would fire out of a 9mm pistol. Defendant claimed
that it would. Defendant, Mr. Davis, and Mr. Chamberlin went outside to
see who was right. Defendant loaded the 9mm pistol with approximately
five or six .380 cartridges and tried firing the gun into the air, but it would
not fire. As defendant was trying to get it to fire, two of the bullets fell
out—apparently ejected as defendant tried operating the slide—leaving
approximately three or four bullets in the gun.

---

2. "[O]rdinarily an unintentional homicide resulting from the reckless use of fire-
arms in the absence of intent to discharge the weapon, or in the belief that it is not loaded,
and under circumstances not evidencing a heart devoid of a sense of social duty, is invol-
untary manslaughter." *State v. Wilkerson*, 295 N.C. 559, 579, 247 S.E.2d 905, 916 (1978). The
State has not pointed us to evidence of a "heart devoid of a sense of social duty" here. *Id.*

Defendant and his friends went back to Mr. Davis' room and defendant continued playing with the loaded gun. He was manipulating the gun without paying attention to where the muzzle was pointing. Mr. Davis warned him, "Watch where you're aiming that gun." Mr. Davis then left the room, which is when he heard Mr. Chamberlin said "Get that fucking gun out of my face" in a "low" or "medium" tone. Shortly thereafter, one shot was fired. The projectile struck Mr. Chamberlin in the head and killed him. Mr. Davis did not testify that he heard a scuffle, an argument, or anything of the sort in the short amount of time between when he left the room and the gunshot. In this context, despite the State's arguments to the contrary, the phrase "[g]et that fucking gun out of my face" does not show that defendant intentionally pointed the gun at Mr. Chamberlin or that he intentionally fired it.

The only other evidence that the State argues shows that defendant intentionally killed Mr. Chamberlin is defendant's flight from the scene, including his decision to strip and hide Mr. Chamberlin's body. After Mr. Chamberlin was shot, defendant dragged his body outside, stripped him of his clothes, and hid the body under a pile of leaves. Defendant then left the scene and did not call an ambulance or the police. After speaking with his mother, however, defendant turned himself in the next morning.

"While the flight of an accused person may be admitted as a circumstance tending to show guilt, it does not create a presumption of guilt, nor is it sufficient standing alone, but it may be considered in connection with other facts in determining whether the combined circumstances amount to an admission." *State v. Gaines*, 260 N.C. 228, 231, 132 S.E.2d 485, 487 (1963) (citation, quotation marks, and parentheses omitted).

Considering defendant's flight in connection with the other facts in evidence and considering the evidence in the light most favorable to the State, we conclude that the State failed to provide sufficient evidence that defendant intentionally shot Mr. Chamberlin. The evidence is— at best—"sufficient only to raise a suspicion or conjecture" of malice. *Williams*, ___ N.C. App. at ___, 741 S.E.2d at 22. There was no evidence of any animosity or fighting between defendant and Mr. Chamberlin. There was no evidence of multiple shots being fired at Mr. Chamberlin. There was no evidence that defendant had any financial or social incentive to kill Mr. Chamberlin. Indeed, all of the State's evidence—and all of defendant's—indicated that defendant and Mr. Chamberlin were close friends and that there was no ill will between them. No one else was in the room when the lethal shot was fired. No one testified that defendant aimed the gun at Mr. Chamberlin and fired. Given the lack of evidence that defendant intentionally fired the shot that killed Mr.

Chamberlin, we hold that the State failed to present sufficient evidence of malice and therefore that the trial court erred in denying defendant's motion to dismiss the charge of murder.

"This error, however, does not require[] that we reverse the trial court's denial of [his] motion to dismiss, vacate the jury verdict[] on [this] charge[], and acquit [him], as . . . defendant contends." *State v. Suggs*, 117 N.C. App. 654, 662, 453 S.E.2d 211, 216 (1995). If the jury necessarily had to find facts establishing a lesser-included offense, and the evidence supports the jury's finding, we may remand for entry of judgment on the lesser offense. *See State v. Jolly*, 297 N.C. 121, 130, 254 S.E.2d 1, 7 (1979) (vacating the judgment of first degree burglary and remanding for entry of judgment on a lesser included offense when there was insufficient evidence of an additional essential element of the greater offense). "As involuntary manslaughter does not contain an essential element not present in the crime[] of murder . . . and the essential element that the killing be unlawful is common to all four degrees of homicide, . . . involuntary manslaughter is a lesser included offense of murder[.]" *State v. Greene*, 314 N.C. 649, 652, 336 S.E.2d 87, 89 (1985). By finding defendant guilty of second degree murder, the jury necessarily found that defendant unlawfully killed Mr. Chamberlin with malice. *See Bedford*, 208 N.C. App. at 417, 702 S.E.2d at 526-27.

Although we have concluded that there was insufficient evidence of malice, there is sufficient evidence of an unlawful killing. *See Wilkerson*, 295 N.C. at 579, 247 S.E.2d at 916. Specifically, there was sufficient evidence to support a finding that defendant was culpably negligent in handling the pistol. See generally, *State v. Hill*, 311 N.C. 465, 471, 319 S.E.2d 163, 167 (1984) ("[I]nvoluntary manslaughter is the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." (citation and quotation marks omitted)); *Greene*, 314 N.C. at 652, 336 S.E.2d at 89 ("That the killing be unlawful is the essential element that must be proved [for involuntary manslaughter]; showing that the killing was by an unlawful act not amounting to a felony or by culpable conduct is evidence to prove that the killing was unlawful."). Therefore, the jury found the necessary elements of the lesser included offense of involuntary manslaughter and we may remand for entry of judgment on that offense. *See Suggs*, 117 N.C. App. at 662, 453 S.E.2d at 216; *Greene*, 314 N.C. at 652, 336 S.E.2d at 89 ("[T]he essential element that the killing be unlawful is common to all four degrees of homicide[.] [Therefore,] we hold that involuntary manslaughter is a lesser included offense of murder."). Before deciding

whether to remand for entry of judgment on the lesser offense, however, we must determine whether defendant is entitled to a new trial based on his remaining arguments concerning the conduct of the trial.

## III. Remaining Arguments

[2] Defendant next argues that the trial court committed plain error by failing to limit the State's cross-examination of defendant and Mr. Davis on their "gang" membership and use of guns, and cross-examining Mr. Davis in a way that insinuated Mr. Davis believed that the shooting could have been intentional. Defendant also argues that the trial court erred by failing to intervene *ex mero motu* in the prosecutor's closing argument when several points of the argument were not based on the evidence.

The standard of review for defendant's evidentiary challenges is plain error, as he failed to object at trial.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted).

Because defendant did not object during the prosecutor's closing argument,

> our review is limited to whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*. Under this standard, only an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken. To establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair.

*State v. Oakes*, 209 N.C. App. 18, 22, 703 S.E.2d 476, 480 (citations and quotation marks omitted), *app. dismissed and disc. rev. denied*, 365 N.C. 197, 709 S.E.2d 918, 920 (2011).

Even assuming that the trial court did err as contended, defendant cannot show prejudice, given that we have reversed his conviction for murder. All of the alleged errors relate to the State's attempts to elicit evidence and argue that defendant intentionally shot Mr. Chamberlin. Despite the State's attempts to imply through its questions and arguments that this shooting was intentional, none of the challenged questions actually produced evidence relevant to intent and the prosecutor's arguments about intent in closing were based only upon those questions and not any facts in evidence. For example, the prosecutor attempted, but failed, to get Mr. Davis to say that the group of friends was a "gang:"

> Q. And you-all all hung around, to use your word, chilled out all the time.
>
> A. Yes.
>
> Q. Everyone of you was a member of something called the Grand Hustle Team, weren't you?
>
> A. Yes.
>
> Q. And the Grand Hustle Team is a gang, isn't it?
>
> A. Not really.
>
> Q. Well, what word do you want to use to describe it?
>
> A. Just friends that hung around each other in the same neighborhood.

The prosecutor continued with an extended line of questioning, still trying to characterize the group as a "gang," without success, and ultimately the trial court sustained a defense objection and ended the line of questioning. Despite the fact that neither this nor other similar lines of questioning of other witnesses elicited any evidence of a "gang" or that the shooting had anything to do with the "Grand Hustle Team," in his closing argument, the prosecutor implied that this act was somehow gang-related by noting the connection to the "Grand Hustle Team" and its fascination with guns. None of the alleged errors would affect a conviction for involuntary manslaughter. We hold that, even assuming the trial court erred, defendant cannot show plain error on the evidentiary issues, nor prejudicial error from the trial court's failure to

intervene *ex mero motu* during the State's closing argument. Therefore, he is not entitled to a new trial.

## IV. Conclusion

We hold that the trial court erred in denying defendant's motion to dismiss the charge of second degree murder because the State failed to present sufficient evidence of malice. Therefore, we vacate defendant's conviction for second degree murder. We remand for entry of judgment and resentencing on involuntary manslaughter because there was sufficient evidence to sustain a conviction as to that lesser included offense. Given our decision to vacate the murder conviction, defendant cannot show prejudice from the alleged errors at trial, all of which relate to the State's attempt to show an intentional killing through cross-examination and argue in its closing that the shooting was intentional. As a result, defendant is not entitled to a new trial.

VACATED and REMANDED; NO PREJUDICIAL ERROR.

Judges McGEE and BRYANT concur.